## 10222

### HAMER v. DAVID.

#### (99 S. E. 816.)

1. LIFE ESTATES—HOLDER UNDER LIFE TENANT—CONTRACTS—TERMINA-
TION OF ESTATE.—Where one holding the interest of the beneficial
owner of a life estate used his position to secure for himself a con-
tract with defendant for a certain amount of cotton per year for
ten years, using his influence with executors to obtain a lease for
defendant, he could not have the benefit of such contract after his
estate terminated.

2. EXECUTORS AND ADMINISTRATORS — ACTIONS — PARTIES — JOINDER. —
Where, in an action on a contract by one who was a *quasi* trustee of
a life estate, it appeared that the trust estate was entitled to the
benefit of the contract, the executors who had charge of he trust
estate should be made parties and allowed to assert their interest.

Before MEMMINGER, J., Dillon, Fall term, ——.
Reversed and remanded.

Action by W. M. Hamer against J. H. David.   Judgment
for defendant, and plaintiff appeals.

*Messrs. Townsend, Rogers & McLaurin* and *W. M. Ste-
venson,* for appellant.   *Mr. Rogers* submits: *One cannot
rely upon misstatements of fact, if the truth is within reach:*
101 S. C. 236; 107 S. C. 203; *Columbia Savings Bank &
Trust Company v. True:* Advance Sheets, December 4, 1918.
*A party to a contract cannot hold fast to the benefits, and at
the same time avoid the obligations under it:* 88 S. C. 160.
*The measure of damage for fraud in sale or rent of land is
the difference between the true value and the price agreed to
be paid:* 46 S. C. 436.

*Mr. Stevenson* submits: *In every action for fraud it is
necessary that the essential elements be alleged and proved:
Chemical Company v. Youngblood* —; Enc. of Pl. and Pr.,
vol. IX, pp. 684, 685, 686-7; 3 Strob. 64; 3 McC. 167; 3
*Chemical Company v. Youngblood* —; Enc. of Pl. and Pr.,
Brev. 64.   *The facts misrepresented, or concealed, must*

*have been material facts, and they must also substantially affect the interest of the person alleged ̀ to have been defrauded:* 12 R. C. L. 297. *A fraudulent intent includes knowledge that the representation is false, and an intent that shall deceive:* 14 Enc. Law 85; 61 S. C. 192. *The false representations must have been relied on by the party defrauded, and he must have had the right to rely on them:* 14 Enc. of Law 109. *One cannot rely upon misstatements of fact, if the truth is within reach:* 101 S. C. 236; 107 S. C. 203. *There must have been damage to the party alleging the fraud:* 50 S. C. 401.

*Mr. M. C. Woods,* for respondent, submits: *That while it is true that a party cannot procure property or a benefit by reason of a fraud and maintain a suit to recover for the fraud without returning or offering to return the property or benefits received by him:* 97 S. C. 34. *But in the case at bar the contract given by respondent to Hamer was wholly without consideration, and respondent is entitled to recover value of cotton delivered to appellant under that contract:* 94 S. C. 314. *We do not undertake to dispute or even modify the rules of fraud announced by the Court in Mobley v. Quattlebaum, 101 S. C. 221, but in the case at bar the relation of friendship exists to such an extent that a degree of confidence has been established, which throws a litigant off his guard, and the rule of arm's length does not and cannot apply:* 96 S. E. 912; 61 S. C. 505; *Huguenin v. Adams* —decision filed 18 September, 1918.

July 14, 1919.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The facts are: Mr. Gibson, Mr. Bethea, and Mr. Hayes were executors of H. P. Price and as such under the will of Mr. Price, were in charge of the land referred to in these proceedings. It appears that one Rising was the beneficiary for life. The plaintiff acquired the interest of Rising.

The terms of the will are not set forth. Mr. David leased the land from the executors. The lease was about to expire, and Mr. David desired to renew it. After conference between Mr. Hamer and the executors, a lease was agreed to be given to Mr. David, by the executors, for a term of 10 years at a rental of 60 bales of cotton per year. There was another agreement between Mr. David and Mr. Hamer, by which Mr. David agreed to pay to Mr. Hamer 15 additional bales of cotton per annum for the full period of 10 years. These two contracts were executed on the same day, to wit, May 13, 1913. It appears that since that time the interest of Mr. Hamer has terminated. Mr. David delivered the 60 bales to the executors and the 15 bales to Mr. Hamer for two years. After that he refused to deliver the cotton to Mr. Hamer and this suit is brought by Mr. Hamer on his 15-bale contract. Mr. David refused to comply with the 15-bale contract, on the ground of fraud. He claims that Mr. Hamer told him that he (Hamer) had already leased the place from the executors, and would not let him (David) have it unless he would agree to pay 75 bales; that, if David would agree to pay 75 bales, then Hamer would secure a lease for a term of ten years, the rent to be paid 60 bales to the executors and 15 to Mr. Hamer. Dr. David alleges that he found out later that Hamer did not have an agreement for a lease; that he was induced by this false and fraudulent representation to sign the 15-bale contract; and that it is void for fraud.

Mr. Hamer states that, while he did not have a lease, yet the executors consulted him, as the beneficiary, as to the term of years and the amount of rent. Mr. Hamer states that Mr. Gibson, one of the executors, was doubtful about a lease for a term of ten years. Mr. Hamer said:

"I want to say that Mr. Gibson, when I approached him, he said, 'He wants it for ten years, and I said I did not think we ought to rent it for ten years.' I said, 'I don't see why you object or any one else, if I am the beneficiary, and

I don't object.' He said he had not thought of that, and then he consented to the 10 years."

Mr. David was very anxious for a 10-year term and was willing to pay 75 bales per annum. It is undisputed that Mr. Hamer used his position as beneficiary to secure the term of 10 years for Dr. David. The contract as made with the executors for the estate extended the term beyond Mr. Hamer's interest, as subsequent developments now show. Mr. Hamer used his position as the beneficial owner of the life estate to secure for himself a contract for 15 bales of cotton per year, for years after his estate might, and in fact did, terminate. Can he have the benefit of that contract, to the detriment of the estate after his interest terminated? The answer should be, he cannot.

In *Smith v. Daniel,* 2 McCord Eq. 149, 16 Am. Dec. 641, we find:

"A tenant for life is considered in the nature of a trustee for those in remainder, and the Court may, therefore, take all the necessary steps to prevent or restrain an abuse of his trust. And when a person purchases with a knowledge of the situation of the property, he takes it coupled with the trust, and will be considered as standing in the same relation to the party."

Hamer took Rising's place, temporarily, and has the right to the rents while he occupied that place; but, now that the estate has been restored to Rising, the latter is entitled to the benefit of the contract which Hamer must be held to have made for the benefit of the estate, and not for himself after his interest terminated, since he was in equity a trustee for those who might succeed to the estate. No Court should allow Hamer to get the 15 bales of cotton per year that will be due after his interest terminated. The 15-bale contract is not void. A contract made with a trustee inures to the benefit of the trust estate, whether the contract is made payable to him as trustee or as an individual. If this side

contract had been made between Dr. David and Mr. Gibson, the interest of the trust estate could not be doubted. Why doubt it when the contract is made with the trustee, Hamer? Executors are trustees.

Dr. David says there was fraud and the whole contract is void. Not necessarily. The Courts do not destroy a contract unless the party complaining has been injured by the fraud. There is nothing in the case to show that Dr. David has been hurt. If Mr. Hamer had told Mr. Gibson that this excellent tenant who is improving the land is willing to pay 75 bales instead of 60 (as he was bound to do), Dr. David would have paid it. So the alleged lease to Hamer, whether true or false, did not affect Dr. David. It is said that Mr. Hamer wanted to keep the 15-bale contract secret. Dr. David agreed to keep it secret, and he cannot complain. The procuring of a 10-year term was a valuable consideration to support the 15-bale lease, but it inures to the benefit of the estate and cannot extend Mr. Hamer's interest. Mr. Hamer cannot have the benefit of it longer than his interest continued.

For the undispted facts of this case, when the *quasi* trustee, Hamer, made the 15-bale contract, it inured to the benefit of the trust estate, and, therefore, the executors should be made parties and allowed to assert their interest.

It is the duty of the Courts to protect trust estates. This case should be remanded to the Circuit Court, with directions that the representatives of the estate of Price be made parties and an accounting be had between all parties.

MR. JUSTICE HYDRICK: I concur in this opinion and also in that of the CHIEF JUSTICE.

MR. CHIEF JUSTICE GARY concurring.

The third exception should be sustained on the ground that the language of his Honor, the presiding Judge, was a charge upon the facts.

It appears from the pleadings that the estate of Price has an interest in the subject of the controversy. Therefore the surviving executor of his estate should be made a party defendant in this action, when the case is remanded.

For these reasons I concur in a reversal of the judgment.

MR. JUSTICE HYDRICK: I concur in this opinion, and also in that of MR. JUSTICE FRASER.

MR. JUSTICE GAGE. The plaintiff sued the defendant upon a written contract to pay 15 bales of cotton per year for a term of ten years; the defendant answered and charged the contract to have been secured by fraud and set up a counterclaim; the jury found for the defendant, and plaintiff has appealed from judgment entered thereon.

The cause has been twice argued here, and the argument has been much after the fashion of that to be had in a cause in equity, when the cause here is a plain one at law.

In such an event we may not weigh the testimony and test the preponderance of it. If there be no harmful error in the course of the trial, and if there be testimony tending reasonably to support the verdict, then the judgment ought, of course, to be affirmed.

We think the instant case is none other. The parties to the action are men in mature life, well known in the community of Dillon where they have always resided, and the jury there knew them and heard what they had to say. They were practically the only witnesses to the essential transaction, and the determination of the issue made by it depended upon the *credibility* of the two men.

The transaction has this historical setting: One Price, of Dillon, had a valuable landed estate; he died testate and left Bethea *et al.* executors of his will, his chief devisee was a man named Rising, and the executors were made trustees to pay Rising the income; the executors in August, 1908, leased the lands to David for five years, commencing with 1909 and ending with 1913, for fifty bales of cotton per year, and Rising was to get the income at the hands of the

executors; in 1909 Hamer, by some unexplained transaction betwixt himself and Rising, secured Rising's right to the rents; in May, 1913, David desired to secure, and did secure from the executors, a lease of the lands for ten years more, starting with 1914, for a rental of sixty bales of cotton per year; on the same day Hamer secured from David the execution of the contract in issue to pay to him fifteen bales of cotton as additional rent for each of the ten years.

The contract reads thus:

Dillon, S. C., May 13, 1913. For value received on or before the 15th day of October of each and every year beginning October the 15th, 1914, and ending October the 15th, 1923, I promise to pay to Wm. M. Hamer, or order, fifteen (15) bales of lint cotton, to average 500 pounds and grade nothing below middling as additional rent the lands this day rented by him for me from J. B. Gibson, W. T. Bethea and W. D. B. Hayes, executors of the estate of H. P. Price, deceased. J. H. David. Witness: J. W. Lanford.

The executors had no knowledge of the existence of this contract until three and a quarter years after its execution. At the time the contract was signed the executors had agreed with David to lease to him the land for a term of ten years for 60 bales of cotton per year.

The major issue in the case is the integrity of the contract before set out; that issue was submitted to the jury, and the verdict was against the contract. David testified he signed the contract because Hamer told him that the executors had leased the land to him, and his only chance to retain it was to pay Hamer 15 bales extra; and that such statement was false and made to induce the 15-bale contract. The quick of the case lies just there.

Thereabout David testified: "He told me that he had leased the land from the executors. He said, 'You can not get it for sixty bales.' I said, 'Mr. Hamer, what do you want for it?' He said, 'I can get seventy-five bales, I believe I can get one hundred bales, but I am going to let

you have it for seventy-five bales.'   I said, 'who can you get
that much from?'   He said, 'from Ed Moore.   He will give
it to me;' and he said 'there are others in this community.'
He said, 'To tell you the truth, I believe I can get one hun-
dred bales, but I am willing to let you have it for seventy-
five bales.'   He represented to me that he had a lease of
the land, so I told him that, in fact, I asked him, 'Does that
mean that I will get the entire place?'   He says, 'Yes.'   I
says, 'Well, I will have to think about it.'   It was about
dinner time when I went home; while I was at home the tele-
phone rang, and I went to the phone, and it was Mr. Hamer,
and he told me the executors, Mr. Bethea and Mr. Gibson,
have signed the contract and lease for sixty bales, and said,
'Come on down and let us fix it up.'   * * *   In signing it I
took Mr. Hamer at his word, that he had leased the place.
I took him to be a friend, and I had confidence in him."

If David swore truly, and the verdict fixes that fact, he
was induced by a false statement of Hamer to sign a con-
tract to pay 15 bales extra, when, in fact, the executors had
agreed to lease to him for 60 bales.

That action on Hamer's part amounts to getting goods
under a false pretense.

But counsel for Hamer says that David was not misled
because the lease of the executors *to him* for 60 bales was
before his eyes when he signed the contract.   That argu-
ment, too, was for the jury and not for us; if the jury
believed what David swore to, and the truth of it depended
upon his veracity, that ends the argument.

And counsel also say that David was not hurt by the con-
tract, because he admitted on the witness stand the land
was worth 75 bales rent.   It is true David must have been
misled to his hurt in order that he may have relief now.
But a Court will not use fine scales to weigh the hurt.   2
Pomeroy, sec. 898.   David was hurt when he was induced
by a false statement of fact to act upon that fact as if it
were true.

It is idle now for the executors to say they would have exacted 75 bales of cotton had they known that Hamer demanded so much.

The fact is they agreed in writing to take 60 bales, and did take it; David had aforetime agreed with them by parol to pay 60 bales, only one feature of the lease was left open, that with reference to the time the lease was to run.

The intervention of Hamer at that juncture with a fabricated statement that he was lessee, was the lever to prize fifteen additional bales out of David.

Had the fraud not been committed, David would have got the property for 60 bales of cotton. That is damage sufficient. 12 R. C. L., page 392, sec. 139.

It is contended, further, that David had lost his right to a remedy by part performance of the alleged fraudulent contract, and by a too long delay in disavowing the balance of it.

This argument proceeds on the maxim *volenti non fit injuria.* It is also a trite saying, and a true one, that a man must help himself before he resorts to the law.

Like every rule the application of these depends upon the circumstances of the case.

There is no proof that David knew that Hamer had made a false statement when the 15 bales of cotton was paid in 1914 and 1915. David did not deliver the 15 bales of cotton in 1916 "because I discovered that Hamer had misrepresented matters. * * * In the summer of 1916 I found out about the situation and I declined to pay any more cotton."

And when Hamer sued for the further performance of the contract, David was bound then to state his defense.

David did not act to indicate that he knew Hamer had deceived him, and that he consented to the wrong.

That is the kernel of the rules before adverted to.

But counsel for the appellant says that David may not hold the benefits of the transaction and eschew the hardship of it.

Such a rule had no application here;. David abides by the contract he made with the executors; he repudiates a separate and severable one which he made with Hamer. The two transactions are totally different.

At the second argument it was suggested by counsel for Hamer that the benefits of the contract were due to the executors and that the executors ought to be made parties to assert these benefits.

But the executors have no contract with David except for sixty bales per year. They were satisfied with that and made a contract to that end. Hamer has sued at law on a contract he made with David; and the sole issue is the validity of it.

MR. JUSTICE WATTS concurs in the dissenting opinion.